# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SAINT GOBAIN AUTOVER USA, INC. )         Case No. 1:06CV2781
et al., )
 )
                    Plaintiffs, )         JUDGE SARA LIOI
 )
         v. )
 )         MEMORANDUM OPINION
 )         AND ORDER
XINYI GLASS NORTH AMERICA, INC., )
et al., )
 )
                    Defendants. )

Plaintiffs Saint Gobain Autover USA, Inc., Saint Gobain Sekurit Mexico, S.A.,

DE C.V., and Saint Gobain Sekurit USA, Inc. (collectively, "Saint Gobain" or "Plaintiffs") filed

the above-captioned action on November 16, 2006, alleging infringement of United States Patent

Nos. RE37,395 ("the '395 patent") and 5,095,669 ("the '669 patent") by defendants Xinyi Glass

North America, Inc. and Xinyi Automobile Glass Co., Ltd. (collectively, "Xinyi" or

"Defendants").

A court's first task in determining whether an accused device infringes a patent is

to construe the claims to ascertain their proper scope. *Lockheed Martin Corp. v. Space

Systems/Loral, Inc.*, 324 F.3d 1308 (Fed. Cir. 2003). Accordingly, the parties came before the

Court on November 21, 2008 for a hearing on the proper construction to be accorded the claims

in the subject patents, commonly referred to as a *Markman* hearing. *See Markman v. Westview

Instruments, Inc.*, 517 U.S. 370 (1996). At the Court's request, the parties submitted

supplemental briefs devoted solely to the meaning of the term "centering" as used in the '669

patent. Upon consideration of the parties' briefs, argument, and the presentation of exhibits, the Court construes the disputed terms as set forth herein.

## I. Background

For purposes of this litigation, Saint Gobain is the patent holder of the '395 and '669 patents. (Amended Complaint, Doc. No. 9, ¶¶ 8-9.)[1] Plaintiffs accuse Defendants of intentionally inducing infringement and/or contributorily infringing both the '395 and '669 patents by making, offering for sale, selling, and/or importing certain glazings for use in automobiles. (Compl. ¶ 10-11.)

Both patents-in-suit relate generally to glazings, i.e., windshields, for installation in motor vehicles. The '669 patent, entitled Spacer for Windshield Bracket, was issued March 17, 1992. The '669 patent discloses and claims a glazing with at least one profiled spacer with a lip portion projecting beyond the periphery of the glazing. In this action, Plaintiffs assert independent claims 1, 9, and 16 against Defendants, and independent claims 2-8, 10-12, 15, and 17-20. The '395 patent is entitled Method of Centering Windshield Glazings. It issued October 2, 2001. The '395 patent discloses and claims a method of centering a glazing upon a mounting bracket. With respect to the '395 patent, Plaintiffs assert independent claims 14 and 15 against Defendants, as well as dependent claim 16.

## II. Legal Standard

Claim construction is a matter of law to be decided exclusively by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381

---

[1] Unless otherwise noted, all record references to the complaint refer to the Amended Complaint filed February 29, 2007. (Doc. No. 9.)

F.3d 1111, 1115 (Fed. Cir. 2004). Claim terms are "generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective date of the patent application." *Id*. at 1313. Absent an express intent to the contrary, a patentee is presumed to have intended the ordinary meaning of a claim term. *York Prods. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed. Cir. 1996).

In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and the prosecution history (if in evidence). *Phillips*, 415 F.3d at 1313. "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582. "The appropriate starting point [. . .] is always with the language of the asserted claim itself." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

The claims also "must be read in view of the specification, of which they are a part." *Phillips*, 445 F.3d at 1315. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. By expressly defining terms in the specification, an inventor may "choose [. . .] to be his or her own lexicographer," thereby limiting the meaning of the disputed term to the definition provided in the specification. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999). Although claims are interpreted in light of the specification, this "does not mean that everything expressed in the specification must be read

3

into all the claims." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983). For instance, limitations from a preferred embodiment described in the specification generally should not be read into the claim language. *See Comark*, 156 F.3d at 1187. However, it is a fundamental rule that "claims must be construed so as to be consistent with the specification." *Phillips*, 415 F.3d at 1316. Therefore, if the specification reveals an intentional disclaimer or disavowal of claim scope, the claims must be read consistent with that limitation. *Id.*

Courts also may consider the patent's prosecution history, if in evidence. The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). The prosecution history "constitutes a public record of the patentee's representations concerning the scope of and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (quoting *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000)). The prosecution history may reveal "whether the patentee disclaimed or disavowed subject matter, narrowing the scope of the claim terms." *Id.* (quoting *Nystrom v. TREX Co.*, 374 F.3d 1105, 1113 (Fed. Cir. 2004)). "Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language." *Id.* (citations omitted). Any such disclaimer must be clear and unambiguous. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-25 (Fed. Cir. 2003). Courts must remain mindful, however, that "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim

4

construction purposes." *Phillips*, 415 F.3d at 1317 (citations omitted).

In most circumstances, analysis of the intrinsic evidence alone will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583. Extrinsic evidence may be considered, as it "'can shed light on the relevant art,' but is less significant than the intrinsic record in determining the 'legally operative meaning of disputed claim language.'" *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (quoting *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004)). Courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernable from examination of the claims, the written description, and the prosecution history. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583). However, the court may appropriately consult "trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Id.* Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317. All extrinsic evidence should be evaluated in light of the intrinsic evidence. *Id.* at 1319.

In construing claims, the Court determines whether or not a term requires construction. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The Court is not required to accept a construction of a term, even if the parties have stipulated to it, but instead may arrive at its own construction of claim terms, which may differ from the constructions proposed by the parties. *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005).

### III. Construction of Disputed Terms and Phrases

Xinyi seeks construction of several claim terms and phrases, many of which recur throughout one or both of the patents-in-suit. In general, Saint Gobain denies that construction is necessary, instead arguing that each of the disputed terms and phrases should be given its ordinary and customary meaning. The disputes in this action focus principally on two terms: "centering" and "aligning."

### A. '395 Patent

#### 1. Claim 14

##### "centering"

As is the case with all the disputed terms and phrases, the parties disagree in the first instance as to whether construction is necessary. Saint Gobain maintains that no construction is necessary, while Xinyi, on the other hand, urges that the term "centering" be construed to mean that the glazing is centered so that "a gap of even width remains all around the glazing." Saint Gobain responds that Xinyi's proposed construction is improper for at least three reasons: (1) it is contrary to the plain language of the claim itself; (2) its adoption would improperly import limitations from the specification; and (3) it is based upon a limitation found in the specification that relates not to the reissue patent now at issue, but to the earlier original-issue patent, which subsequently was expanded by the reissue patent in a way that rendered the specification language cited by Xinyi (which includes the proposed limitation) inapposite. Finding each of Saint Gobain's counterarguments meritorious, the Court rejects Xinyi's proposed construction and concludes that no construction is necessary.

Claim 14 teaches "[a] method of centering a glazing upon a mounting bracket." According to the claim language, the glazing has "a surface with a periphery for receiving a

spacer," with the "periphery including a glazing edge[.]" The method of "centering" taught by claim 14 consists of "providing a glazing that has a spacer on at least a portion of its periphery," with the spacer having a lip portion extending beyond the edge of the glazing. When the glazing is placed in the mounting bracket, the "lip portion of the spacer contacts said bracket to provide a force for centering said glazing thereon, which force is sufficient to maintain centering of the glazing on the bracket and to provide a gap between said glazing edge and the bracket along said portion of said periphery of the glazing." According to Saint Gobain, the language at the end of the claim – "along said portion of said periphery of the glazing" – is of paramount importance because it defines the "centering" function performed by the lip portion of the spacer. Specifically, when read as a whole, the claim language indicates that "centering" occurs only along the portion of the periphery of the glazing to which the spacer is attached.

Xinyi concedes that claim 14 does not require that the glazing have a spacer along its entire periphery but, as the claim language clearly specifies, only on "at least a portion" thereof. Nevertheless, Xinyi argues that "centering" must be construed as requiring "a gap of even width all around the glazing," i.e., that the glazing must be centered uniformly along all four sides, irrespective of whether all four sides have a spacer. In support of this construction, Xinyi cites the specification, which provides that "[d]uring insertion of the glazing into the window frame, glazing is automatically centered, so that a gap of even width remains all around the glazing." (Col. 3:13-15.) Xinyi claims that here the patentee acted as his own lexicographer by setting forth a specific definition for "centering."

A patentee may act as his own lexicographer by specifically defining terms of a claim contrary to their ordinary meaning. *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1376 (Fed. Cir. 2006) (quoting *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d

1371, 1374 (Fed. Cir. 2004)). "Interpretation of descriptive statements in a patent's written description is a difficult task, as an inherent tension exists as to whether a statement is a clear lexicographic definition or a description of a preferred embodiment." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003). In such situations, the court aims "to interpret claims 'in view of the specification' without unnecessarily importing limitations from the specification into the claims." *Id.* (citing *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204-05 (Fed. Cir. 2002)). "When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description." *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1370-71 (Fed. Cir. 2005) (citing *Bell Atl. Network Servs. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001)). The statement of intent in the specification "must have sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term." *Id.* (citations omitted).

Saint Gobain explains that '395 patent is a reissue patent and that the statement from the specification cited by Xinyi relates to the claims in the original patent, not the reissue. The original is U.S. Patent No. 5,519,979 ("the '979 patent"), issued May 28, 1996. It is undisputed that the specification of the '979 patent includes the exact same statement. ('979 patent, Defs.' Ex. B, Col. 3:15-17.) This is crucial because, according to Saint Gobain, the specification language Xinyi claims supplies the definition of "centering" actually addresses the claims of the earlier original patent (which also appear in the reissue patent but are not asserted in this case). The claims in the '979 patent were much narrower than those of the reissue patent. The '979 patent described a glazing with a spacer on substantially its entire periphery (*Id.*, Col.

8

4:58-64), [2] while the pertinent claims of the '395 reissue patent describe a glazing with a spacer on at least a portion of its periphery. ('395 reissue patent, Col. 6:16-21.) Saint Gobain's clear purpose in seeking the reissue patent was to expand the claims to cover a broader invention; specifically, to claim a glazing with a lip on only a portion of its periphery (i.e., on one or more of the four sides) rather than on substantially the entire periphery (i.e., on all four sides only).

Xinyi attempts to bolster its proposed construction by citing prosecution history, but it cites the history of the '979 patent, not the '395 reissue. (Defs.' Claim Constr. Mem., Doc. No. 98, at 6, 8-9; Tr. of Nov. 21, 2008 *Markman* Hearing, Doc. No. 105, 35:15-21, 67:4-5, 80:13-18.) Under the circumstances presented, this evidence merely reinforces Saint Gobain's explanation. Indeed, Xinyi's references to the prosecution history illustrate that this limitation set forth in the specification – describing the "gap of even width all around the glazing" – relates to the '979 patent, which required that the spacer be present on all four sides of the glazing, and does not apply to the asserted claims of the '395 reissue patent (which did not appear in the '979 patent). These facts (particularly 'the '979 specification and the '979 prosecution history) illustrate rather vividly that Xinyi's proposed construction relates to the earlier invention, which had a spacer with a lip on substantially the entire periphery. And while the '395 reissue patent encompasses such an invention, it is not so limited. Indeed, the motivation for obtaining the '395 reissue patent was to claim a broader version of the earlier invention, one that did not require a spacer on all four sides and, correspondingly, did not provide for centering on all four sides either.

Furthermore, the prosecution history also demonstrates that the term "centering" possessed an ordinary meaning to a person of ordinary skill in the art before the '979 patent was

---

[2] Claim 1 of the '979 patent is exactly the same as claim 1 of the '395 reissue patent. Claim 1 is not asserted in this case.

issued, independent of any effort by the applicant to define the term in the specification. The examiner's remarks evince a fluent analysis of the "centering" function as it related to both the patent being examined (the '979 patent) and the prior art. (*See, e.g.*, Def.'s Ex. E, 76-77, 80.) Indeed, the examiner's initial rejection was based at least in part upon his conclusion that the prior art already disclosed a lip having "an inherent tendency to center the glazings [. . .]." (*Id*. at 80.) Saint Gobain responded by amending the claims to provide more specificity and argued that the prior art did not, in fact, disclose an invention that performed the centering function. (*Id*. at 83-87.) The examiner accepted this argument and allowed the claims. (*Id*. at 91.) Not once during this discourse is it indicated, or even implied, that the "centering" under discussion is "centering" as expressly defined by the applicant, rather than as its plain and ordinary meaning was understood by the examiner. Nor does the prosecution history reveal any convincing evidence that the ordinary meaning of the term necessarily required that the centering function occur on all four sides of the glazing (even though the claimed invention in fact may have provided for such centering since at the time the claims called for a spacer on substantially entire the periphery of the glazing).

Xinyi's only response to this argument is that none of the historical context (in particular, the expansion of the claims from the '979 patent to the '395 reissue patent) makes any difference. Xinyi argues that the only relevant change from the '979 patent to the '395 reissue patent was the position of the spacer, not the nature or location of the centering. Xinyi takes the position that if Saint Gobain wanted to change the '979 patent to provide for centering only on the portion of the periphery having a spacer, rather than around the entire periphery, it could have, but needed to do so expressly.

The Court disagrees. The term "centering" had an ordinary meaning to one of

skill in the art before it was used by Saint Gobain, first in the '979 patent and, later, in the '395 reissue patent. That ordinary meaning was intended to govern the use of the term throughout. None of the evidence cited by Xinyi persuasively establishes that Saint Gobain's use of the term "centering" was intended to represent a departure from that ordinary meaning. Indeed, the specification lacks any evidence of a clear expression of an intention by the inventor to redefine the term "centering." Likewise, the claim language itself makes no mention of the need for "a gap of even width all around the glazing." Xinyi's argument always returns to this specification language, which Saint Gobain has demonstrated relates directly to the claims originally present in the '979 patent which, although part of the '395 reissue patent, are not asserted in this action.

Moreover, even if the specification language did relate specifically to the '395 patent, the absence of any such language from the claims themselves clearly demonstrates that the inventor never intended the claims to be so limited. As the Federal Circuit has frequently admonished, it is improper to "at any time import limitations from the specification into the claims*." CollegeNet, Inc. v. Apply Yourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002)). Specifically, the Federal Circuit "has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is meant by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'" *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989) (quoting *E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988)). Having concluded that the inventor did not use the specification to specifically define "centering" in the manner Xinyi suggests, the Court finds that adopting Xinyi's proposed

construction, which is based entirely upon a single statement in the specification, would be inappropriate.

The interpretation of the evidence advocated by Xinyi amounts to a contention that in order to achieve its purpose in obtaining the '395 reissue patent, Saint Gobain was required to go back and delete the language concerning "a gap of even width all around the glazing" from the specification, or else be required to produce an invention that performed the centering function on all four sides of the glazing notwithstanding the absence of a spacer (which all agree is what performs the centering function) from as many as three of the four sides. Neither the law nor the relevant facts support such an interpretation. The claim term to which the specification language is particularly relevant remains a part of the reissue patent; it is simply not at issue in this litigation. Saint Gobain had no reason to believe that such language would somehow limit its reissue claims by infecting those claim terms with teachings that did not apply to those claims and limited them in ways Saint Gobain did not intend. Most importantly, under such circumstances, a person of skill in the art would not understand such a limitation – which Xinyi insists must inform the understanding of the term "centering" – to be consistent with the ordinary meaning of that term.

In light of all the intrinsic evidence, the Court finds that the patentee did not act as his own lexicographer with respect to the term "centering," and, furthermore, that adoption of Xinyi's proposed construction of "centering" would entail improperly importing a limitation from the specification into the claim. The plain and ordinary claim language satisfactorily describes the centering function and, under the circumstances, in the absence of countervailing evidence in the specification or prosecution history, that language must control. *See DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008) (citing *Northern Telecom Ltd. v.*

*Samsung Elecs. Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000)). Accordingly, the Court declines Xinyi's proposal and instead finds that no construction is necessary.

### "force for centering"

Building upon its proposed construction of "centering," Xinyi asserts that the phrase "force for centering" also requires construction. This phrase appears in claims 14, 15, and 16 of the '395 patent, and in claims 9 and 16 of the '669 patent, all of which have been asserted against Xinyi.

Consistent with its construction of "centering," Xinyi argues that the "force for centering" must be "pressure sufficient to overcome friction and move the weight of the window to provide a constant gap of even width all around the glazing." However, once the Court's conclusion regarding the term "centering" in the '395 patent is taken into account, Xinyi's proposed construction of "force for centering" – which presupposes adoption of its construction of "centering" – necessarily fails. If, as the Court finds to be the case, centering occurs only where a spacer is present, there is no support for finding that the force for centering must have an effect even in areas where no spacer is present. To the contrary, the force for centering is (as the plain language of the claim indicates) provided by the spacer, and "sufficient to maintain centering of the glazing on the bracket and to provide a gap between" the edge of the glazing and the bracket, along the portion of the periphery where there is a spacer. This accords with the plain language of the claims. As a result, no construction is required.

### "maintain centering"

Xinyi also asks the Court to construe the term "maintain centering," which appears in asserted claims 14 and 15 of the '395 patent. According to Xinyi, not only must the claimed invention provide for "centering" as discussed supra, it also must "maintain centering,"

which, according to Xinyi "means that the lip portion of the spacer provides sufficient force to keep or prolong a constant gap of even width all around the glazing, which force must be sufficient to overcome other external forces on the glass."

Saint Gobain counters that no construction is required, and the Court agrees. Much of Xinyi's proposed construction (the portion referring to "a constant gap of even width all around the glazing") coincides with its interpretation of "centering" which, as explained herein, the Court rejects. As for the latter segment of Xinyi's proposed construction (the portion referring to a force sufficient to overcome external forces on the glass), this interpretation is unsupportable. The phrase "maintain centering" simply adds the term "maintain" to the previously-discussed claim term "centering." The Court finds that the term "maintain" has a plain and ordinary meaning to one of ordinary skill in the art and, when added to the term "centering," simply indicates that the centering function performed by the spacer is prolonged, i.e, that it is not fleeting or temporary. Xinyi's suggestion that the phrase "maintain centering" independently requires a force sufficient to overcome external forces on the glass finds no support in the intrinsic record and, therefore, Xinyi's proposed construction is rejected.

### 2. Claims 15 & 16

With respect to claims 15 and 16 of the '395 patent, the only areas of dispute relate to "centering," "force for centering," and "maintain centering." "[I]f a claim term appears in more than one claim it should be construed the same in each." *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1371 (Fed. Cir. 2003) (citing *CVI/Beta Ventures v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997), *cert. denied*, *Marchon Eyewear v. Tura LP*, 522 U.S. 1190 (1998)). The parties agree that these terms should be construed consistently throughout the patent. Based upon the analysis set forth in connection with Claim 14, the Court concludes that

14

none of the disputed terms requires construction.

**B. '669 patent**

**1. Claim 1**

**"centering"**

The analysis begins with the language of the claim, which describes a glazing with "a first spacer attached to one surface of the glazing proximate to a peripheral edge thereof and adjacent the bracket for supporting the weight of the glazing, the first spacer being provided with means for centering [. . .] the glazing upon the bracket [. . .]." (Col. 4:22-26.)

Given the opportunity to direct its arguments exclusively to the '669 patent, Xinyi essentially repeats those it made in its opening brief, which apply equally to the '395 patent (and which the Court rejected above). Incorporating the thorough discussion set forth supra, the Court rejects Xinyi's arguments and finds construction unnecessary. Some additional discussion is warranted, however, because the '669 patent was issued before either the '395 reissue or its predecessor (the '979 patent). As a result, Saint Gobain's reference to the changes occurring from the '979 patent to the '395 patent as a means of explaining the specification language on which Xinyi's proposed construction hinges holds considerably less persuasive value (if any at all) in connection with the '669 patent. Due to this difference, the Court ordered additional briefing on the subject, which has been fully considered. Even in the absence of this explanation, the Court is convinced that adopting Xinyi's proposed construction amounts to a suggestion that the Court read limitations into the claims from the specification. Because doing so would contravene a cardinal principle of claim construction, the Court rejects Xinyi's proposed construction.

In its supplemental filings, Xinyi again argues that the specification serves as a

dictionary for the claims, defining "centering" with the following statement (which is the exact same statement that appears in the '395 patent and forms the basis for Xinyi's argument in connection therewith): "During insertion of the glazing into the window frame, glazing is automatically centered, so that a gap of even width remains all around the glazing." (Col. 3:19-21.) As explained previously, the Court rejects any contention that this language represents an instance of the inventor acting as his own lexicographer. The statement lacks the clear expression of intent needed to perform a lexicographic function and, moreover, is not phrased in express definitional language. Thus, Xinyi's proposed construction reduces to an argument that the specification should inform the interpretation of the claim language. As a doctrinal matter, this argument is unobjectionable; certainly, the law requires that the "claims 'must be read in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 53 F.3d at 979). But this does little, by itself, to resolve the dispute in this case, as the language relied upon by Xinyi does not lead definitively to any single conclusion and the Court is, in any event, required to use the claim language as its starting point and is proscribed from reading limitations into that language from the specification.

Other than the single sentence in the specification on which Xinyi focuses its attention, its other citations to the patent are either equally consistent with, or (in at least one crucial respect) more supportive of Saint Gobain's interpretation. Xinyi refers to the following sentence from the "Summary of the Invention" in support of its proposed construction:

> While the lip portion of the spacer carries the dead weight of the glazing on the one side, it simultaneously assumes the centering and sealing function for the surrounding gap between the peripheral area of the glazing and the flange of the window frame opposite the peripheral area. This results in said gap having a constant width.

(Col. 2:18-24.) Xinyi highlights the word "surrounding" to imply that the gap being referred to is

16

the gap between the peripheral area of the glazing and the flange of the window frame all around the glazing. A common sense reading of this language, however, suggests that the opposite is true, i.e., that the term "surrounding" was included precisely to refer to that portion of the gap *surrounded by the spacer*, rather than along the entire periphery of the glazing.

The sentence begins by referring to the lip portion of the spacer, and then provides that "it", i.e., the lip portion of the spacer, while also "carr[ying] the dead weight of the glazing on the one side," "simultaneously assumes the centering [. . .] function for the surrounding gap [. . .]." The sentence also separately defines the "gap" to which it refers as the area "between the peripheral area of the glazing and the flange of the window frame opposite the peripheral area." Thus, the word "surrounding" clearly is not included (as Xinyi posits) merely to define the location of the "gap", as any such interpretation renders it superfluous. Rather, it is intended to clarify where the centering occurs along that gap, which is where the gap is surrounded by the spacer. As it is undisputed that the claim language only requires a spacer on one edge of the glazing, in such instances the gap is surrounded by the spacer only along the edge where the spacer is present. That is where the centering function takes place.

This reading of the cited language thus reinforces the propriety of Saint Gobain's construction while simultaneously discrediting Xinyi's proposal. Indeed, if the inventor intended this statement to define the centering function as Xinyi suggests, he would have been much better served by omitting the word "surrounding" altogether. In that case, the summary of the invention would have stated that the lip portion of the spacer "assumes the centering [. . .] function for the gap between the peripheral area of the glazing and the flange of the window frame opposite the peripheral area." Had such a formulation been espoused, Xinyi's position would be much stronger. The fact that it was not, but instead the inventor expressly included the

17

word "surrounding," indicates that the word was intended to carry some meaning. When viewed in context, the most logical understanding of the cited provision suggests that this word was included both to delimit the specific portion of the gap being referred to, and, as a direct consequence, also to define the centering function as limited to that specific portion of the gap, which is described as the portion surrounded by the lip portion of the spacer.

Xinyi's other direct citation to the patent in its supplemental brief is simply ineffectual, and does not support its proposed construction (or, for that matter, any construction in particular).  Xinyi argues that the following statement, included in the "Background of the Invention," supports its proposed construction: "When inserting the glazing into the window frame of the body, the glazing must be correctly positioned and then held stationary during the setting phase of the assembly adhesive." (Col. 1:41-44.) Contrary to Xinyi's suggestion, this statement has no bearing on the construction of the term "centering." The statement does not expressly or impliedly address the centering function. Xinyi emphasizes the words "correctly positioned" in a manner intended to suggest that these words support Xinyi's construction, but absolutely nothing in the cited sentence or its vicinity addresses what it means for the glazing to be "correctly positioned[.]" Thus, even if the Court assumes that the "correct position[ing]" of the glazing refers at least in part to centering, Xinyi's citation merely begs the question, and does nothing to advance its proposed interpretation of the centering function.

Xinyi also offers several references to the prosecution history of the '669 patent, but none is persuasive of its proposed construction. Rather, the cited portions of the prosecution history are simply inconclusive as to the meaning of centering. All are completely consistent with Saint Gobain's position.

After the patent examiner rejected the claims of the '669 patent under 35 U.S.C. §

18

102(b) as anticipated by U.K. Patent 2 147 244 A by Weaver ("Weaver") and under 35 U.S.C. §

103 as anticipated by Weaver in view of U.S. Patent 3,478,475 by Strack, the applicants

amended the independent claims "so as to distinctly claim the automatic centering function of the

applicant's extended lip portion[,]" and made several (ultimately successful) arguments to

overcome the prior art. Xinyi refers to several of these in its supplemental brief:

> Applicant's claimed spacer also provides means for centering and aligning the
> glazing within a bracket as does that disclosed by Weaver. However, applicant's
> claimed invention utilizes a lip portion biased against a bracket element
> positioned perpendicular to the plane surface of the glazing to achieve this
> function. Weaver's locking tab system described above utilizes openings in a
> portion of a bracket parallel to the glazing.
>
> [* * *]
>
> Although Weaver's backlight assembly includes means for retaining a glazing in
> proper position while an adhesive bead cures, an initial precise alignment of the
> tabs and receiving holes described above is required in order to allow window
> assembly into the frame. In contrast, applicant's elongated lip allows automatic
> alignment of a glazing brought into contact with its receiving frame. Applicant's
> lip portion obviates the need for precise pre-assembly alignment required by
> Weaver and thereby increases ease of installation.
>
> [* * *]
>
> Applicant's claimed invention comprises an automatically centering and aligning
> window assembly wherein an elongated lip portion provides precise positioning
> of a glazing within a window bracket. Assembly of applicant's window into a
> corresponding bracket requires only a rough, pre-insertion alignment of the
> glazing.

(Def.'s Ex. D, at 95-96.)

The purpose of these statement was to distinguish the application at issue (which

eventually became the '669 patent) from the prior art, specifically Weaver. The applicant did this

by pointing out that the claimed spacer used a lip (rather than a locking tab system) to perform

the centering and aligning functions. Very little is said about the details of the centering function.

The descriptions of the claimed invention that are included in the passage – it "allows automatic

centering" and "provides precise positioning" of the glazing – are completely consistent with the interpretation of the claim language advocated by Saint Gobain. Certainly, nothing in the cited remarks indicates that the centering function performed by the lip must occur on all four sides of the glazing, irrespective of the placement of the lip. Accordingly, the Court finds Xinyi's citations to the prosecution history of the '669 patent unsupportive of its proposed construction.

In the end, the Court is simply not persuaded that the specification language cited by Xinyi was intended to define the term "centering" throughout the '669 patent. The other arguments Xinyi uses to support its proposed construction either do not support it at all, are more consistent with the contrary view, or are otherwise unpersuasive of Xinyi's position.[3] Therefore, Xinyi's proposed construction is rejected, and the Court holds that no construction is necessary.

### "aligning"

In addition to "centering," the other major dispute concerns the "aligning" function described in claims 1, 9, and 16 of the '669 patent. Xinyi argues that the term should be construed to mean "maintain[ing] a constant equal distance between the facing surfaces of the bracket and the glazing."[4] Saint Gobain asserts that the term "aligning" "refers to a uniform distance between the bracket and the glazing along a contact surface of the spacer." These constructions are very similar, if not identical.

Xinyi contends, and the Court agrees, that based upon the language used in the patent, "aligning" is conceptually distinct from "centering." That being the case, and in light of

_____

[3] Xinyi also offered the declaration of Alan Jeffrey Giacomin, Ph.D., in support of its proposed construction. (Def.'s Ex. J.) At the hearing, Saint Gobain objected to the use of Dr. Giacomin's declaration on the ground that it was not provided until two days before the hearing. Because the Court finds the issues capable of resolution based upon the intrinsic record, resort to such extrinsic evidence is unnecessary and inappropriate. *See SunRace Roots Enters. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1307 (Fed. Cir. 2003) (citing *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998)). Accordingly, the Court declines to consider Dr. Giacomin's declaration, rendering Saint Gobain's objection to its introduction moot.

[4] Xinyi initially took the position that this alleged failure to define "aligning" rendered the claims including that term invalid due to indefiniteness. During the *Markman* hearing, Xinyi relinquished this position and instead asked the Court to adopt its proposed construction of the term.

the similarity of the ordinary meaning of those two terms, the Court finds that construction is required. Despite their use of somewhat disparate language, the parties appear to be in at least partial agreement as to the meaning of the term. Unquestionably, the parties agree that for purposes of the term "aligning," they are referring to the vertical distance from the bottom edge of the glazing to the point where it contacts the bracket. They also agree that the claimed invention makes that distance uniform or equal; this is the "aligning" function. And they also (likely) agree that (at least a portion of) the bottom edge of the glazing has a spacer attached to it, and that it is the spacer that performs the aligning function.

Where the proposed constructions may diverge is in describing the location where (and the degree to which) the aligning function occurs.[5] Saint Gobain's construction contemplates aligning taking place along the portion of the glazing to which a spacer is attached. By contrast, Xinyi's proposed construction suggests that the aligning must occur all around the glazing, not just where there is a spacer.[6]

For essentially the same reasons discussed in connection with the term "centering," the Court finds Xinyi's proposed construction overly-restrictive and inappropriate. Claim 1 describes "means operatively associated with the bracket [i.e., the spacer] for aligning the glazing at a predetermined uniform distance away from said bracket[.]" This is consistent with construction proposed by Saint Gobain. Later claim language reinforces this interpretation. For instance, dependent claim 8 clearly defines the "rounded top portion" of the spacer as the "alignment means," and indicates that the spacer "contacts the bracket to support the glazing at said predetermined distance therefrom." Thus, with the parties in general agreement that the

---

[5] It is simply not clear whether a dispute exists on this point. If not, the parties are in total agreement as to the appropriate construction of "aligning."

[6] This is consistent with Xinyi's other essential contention, that centering must occur all around the glazing, not just where the spacer is attached.

"aligning" function refers to the distance between the surfaces of the bracket and the glazing (to which the spacer is attached), it is evident that the aligning occurs only where the glazing has a spacer attached to it. It makes no sense to suggest (as Xinyi does (at least by implication)) that the spacer performs this function by creating a uniform distance between these surfaces in areas where there is no spacer, i.e., where the glazing directly contacts the bracket.[7] Accordingly, to the extent the parties are not in complete agreement, the Court adopts Saint Gobain's proposed construction of "aligning." The glazing and the bracket are "aligned" when there is a uniform distance between the bracket and the glazing along a contact surface of the spacer.

### 2. Claim 4

**"elastomer"**

Xinyi proposes that the term "elastomer" be construed as "a high molecular weight polymer with the property of elasticity," drawing this definition from a technical dictionary. Saint Gobain says no construction is necessary. The Court agrees with Saint Gobain, finding that a person of ordinary skill in the relevant art is readily familiar with the meaning of the term "elastomer." Resort to extrinsic evidence from a technical dictionary is, under the circumstances, unnecessary.

**"formed by extrusion of an elastomer, and [. . .] mounted [. . .] on the glazing."**

According to Xinyi, this phrase should be construed as "produced by extruding a suitable polymer that adheres to the glazing by bonding." Saint Gobain responds that construction is not required. The Court adopts Saint Gobain's position and finds construction

---

[7] Indeed, this is impossible by definition. Xinyi concedes that the patents do not require a spacer along the entire periphery of the glazing. The distance between the glazing and the bracket in areas where there is a spacer will be something greater than zero (representing the area occupied by the spacer itself), whereas in the areas where there is no spacer, the glazing will contact the bracket directly and the distance between the two will be zero. Xinyi's proposal arguably requires that these distances be equal regardless of whether or not a spacer exists in a certain area. As explained, this cannot possibly be true.

unnecessary. The meaning of this claim language would be plain to a person of ordinary skill in the art. The limitations Xinyi seeks to impose – use of a "suitable polymer" (where the claim provides for an "elastomer,") and "adhere[nce] to the glazing by bonding" (where the claim calls simply for "mounting") – are improper.

### 3. Remaining Asserted Claims in the '669 Patent

Other than the terms and phrases discussed supra, the only disputes relative to the '669 patent concern the repeated appearance of the terms "centering," "force for centering," and "aligning."[8] Based upon the above analysis, the Court finds that centering and its related terms do not require construction, and that aligning merits construction as discussed in connection with Claim 1. To the extent these terms recur elsewhere in the '669 patent, these conclusions apply throughout.

**IT IS SO ORDERED**.

Dated: February 24, 2009

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[8] An earlier dispute concerning the phrase "resiliently bending" was resolved during the hearing when Xinyi withdrew its request for construction and agreed that none was necessary. (Tr. of *Markman* Hearing held Nov. 21, 2008, at 106:24 – 107:5.)