# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| SAINT GOBAIN AUTOVER USA, INC., et al., | ) ) ) | CASE NO.  1:06CV2781 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | MEMORANDUM OPINION |
| XINYI GLASS NORTH AMERICA, INC., et al., | ) ) ) ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the motion of Defendants, Xinyi Glass North America, Inc. and Xinya Automobile Class Co., Ltd. (collectively "Xinyi or "Defendants"), for summary judgment. (Doc. No. 122.) The motion is fully briefed and ripe for decision.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Saint Gobain Autover USA, Inc., Saint Gobain Sekurit Mexico, S.A., DE C.V., and Saint Gobain Sekurit USA, Inc. (collectively "Saint Gobain" or "Plaintiffs") are the patent holder of the '395 and '669 patents.[1] (Doc. No. 9, Am. Compl. at ¶¶ 8-9). Plaintiffs accuse Defendants of intentionally inducing infringement, and/or

---

[1] United States Patent No. 5,095,669 ("'669 patent") was issued by the United States Patent & Trademark Office (PTO) on March 17, 1992. (Doc. No. 129, Plaintiff's Opp. Brief, Ex. 1.)  United States Patent No. RE37,395 ("'395 Patent") issued on October 2, 2001. (Opp. Brief, Ex. 2.)

contributorily infringing both the '395 and '669 patents by making, offering for sale, selling, and/or importing certain aspects of the patents.

Both patents-in-suit relate generally to glazings, i.e., windshields, for installation in motor vehicles. The '395 patent is entitled Method of Centering Windshield Glazings, and discloses and claims a method of centering a glazing upon a mounting bracket. The invention is summarized in the '395 patent, which states, in part:

> The invention provides a profiled spacer which acts as a support and centering element for the glazing. The profiled spacer includes a lip portion which is oriented approximately parallel to the glazing surface and which projects beyond the peripheral or edge of the glazing. The lip portion, in the installation position of the glazing, rests against the flange of the window frame running parallel to the peripheral area of the glazing.
>
> The profiled spacer described in the invention is dimensioned in thickness and length so that the lip portion may deform during insertion of the glazing into the window frame. The lip portion is bent from about 45 to 90 degrees relative to the original orientation of the lip portion. While the lip portion of the spacer carries the dead weight of the glazing on the one side, it simultaneously assumes the centering and sealing function for the surrounding gap between the peripheral area of the glazing and the flange of the window frame opposite the peripheral area. This results in said gap having a constant width. The covering of said gap by an additional sealing or decorative profile is therefore, no longer necessary. Hence, an extraordinarily economical solution is provided by the invention.

(Opp. Brief, Ex. 2, Col. 2:3-24.) Plaintiffs assert independent claims 14 and 15 of the '395 patent, as well as dependent claim 16.

The '669 patent, entitled Spacer for Windshield Bracket, discloses and claims a glazing with at least one profiled spacer with a lip portion projecting beyond the periphery of the glazing. The patent contains a virtually identical summary as that for the '395 patent above, though it also includes the following language:

> A bead of adhesive lies adjacent the profiled spacer, in direct contact with the window frame and either the glazing or the spacer. Optionally, a

2

second spacer is employed for increased support. The second spacer also lies adjacent the adhesive bead, preferably opposite the first spacer so as to retain the adhesive bead between the two spacers.

(Opp. Brief, Ex. 1, Col. 2:28-34.) With respect to the '669 patent, Plaintiffs assert dependent claims 1, 9, and 16, and independent claims 2-8, 10-12, 15, and 17-20.

Plaintiffs filed the present lawsuit on November 16, 2006. (Compl.) By the Amended Complaint, Plaintiffs seek an injunction against continued infringement, damages for past infringement, treble damages for willful infringement, and attorney's fees and costs. (Am. Compl. at 3.) On February 24, 2009, the Court issued a Memorandum Opinion on the subject of claim construction. Specifically, the Court found that the term "centering" and its related terms did not require construction, while the term "aligning" merited construction and related to the process of ensuring "a uniform distance between the bracket and the glazing along a contract surface of the spacer." (Doc. No. 118, Memo. Opinion at 22-23.)

Defendants seek summary judgment, pursuant to Fed. R. Civ. P. 56(c). In support of their motion, defendants offer as defenses non-infringement, obviousness, and non-enablement.

## II.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. […]

3

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. […] The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

4

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III.

### LAW AND ANALYSIS

#### A.     Plaintiffs' Motions in Limine

Before the Court reaches the merits of the dispositive motion, it must address several evidentiary matters. Plaintiffs have filed three motions in limine. The first motion (Doc. No. 130) seeks to preclude Defendants from relying upon certain theoretical calculations contained in the expert report of Dr. A. Jeffrey Giacomin. Two other motions seek to prevent Defendants from raising the defense of non-enablement (Doc. No. 131) and the defense of obviousness (Doc. No. 132).

*1.     Plaintiffs' motion to preclude defense of obviousness*

5

In their Amended Answers, Defendants raised the affirmative defense of obviousness. (Doc. No. 11, Xinyi Automobile Glass Co. Am. Ans., ¶¶ 17, 18; Doc. No. 12, Xinya Glass North America Am. Ans., ¶¶ 17, 18). During fact discovery, Plaintiffs served interrogatory requests upon Defendants seeking to discover the basis for Defendants' invalidity defenses. (Doc. No. 132, Mot. in Limine, Ex. B.) On June 22, 2007, Defendants responded by stating that the invalidity defenses were raised "to avoid waiving the defense. Investigation continues and Xinyi will supplement its response to this interrogatory as additional information becomes available." (Ex. C at 2.)

Unsatisfied with this response, Plaintiffs sent two letters to defense counsel, August 7, 2007 and December 28, 2007, requesting a "substantive" response to the invalidity contention interrogatories. (Ex. D.) Defense counsel did not respond to either letter. As of the close of discovery on June 1, 2008, Defendants had failed to supplement their response to Plaintiffs' interrogatories.

On August 1, 2008, Xinyi served its expert reports on issues upon which it had the burden of proof, which included the report of Samuel R. Phillips, PE, Defendants' invalidity expert. Phillips devoted one line to Defendants' obviousness defense, noting "three of the prior-art patent documents suggest invalidity for obviousness: DE 3,638,449 ('Hablitzel'), US 3,425,176 ('Claims'), and US 3,851,432 ('Griffin')." (Ex. F at ¶ 22.)

Defendants supplemented their response to Plaintiffs' interrogatory relating to their invalidity defenses on September 30, 2008. With respect to the defense of obviousness, Xinyi stated that "differences between the subject matter described and claimed in the patent[s] and the prior art [were] such that the subject matter as a whole

6

would have been obvious at the time the invention[s were] made to a person having ordinary skill in the art to which the subject matter pertains." (Ex. G at 4.) For each patent, defendants identified certain prior art that they believed supported their affirmative defense. It is significant that the prior art identified in Defendants' responses was different than the prior art previously identified and relied upon by Phillips.

It is Plaintiffs' position that Defendants violated Fed. R. Civ. P. 26(e) by failing to seasonably supplement their responses to Plaintiffs' discovery requests. The Court agrees. Rule 26(e)(1)(A) requires parties to supplement their discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect […]." Fed. R. Civ. P. 26(e)(1)(A); *see Toth v. Grand Trunk R.R.*, 306 F.3d 335, 343 (6th Cir. 2002). However, a party need not supplement a response if the information has "otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *see SPX Corp. v. Bartec*, LLC, 574 F. Supp. 2d 748, 756 (E.D. Mich. 2008).

Rule 37(c)(1) authorizes the trial court to exclude evidence that was withheld in violation of Rule 26(a) or (e). The party requesting exclusion under Rule 37(c)(1) need not show prejudice, rather the non-moving party must show that the exclusion was "harmless" or "substantially justified." Fed. R. Civ. P. 37(c)(1); *SPX Corp.*, 574 F. Supp. 2d at 756. In the absence of such a showing, case law suggests that the exclusion of non-disclosed evidence is "automatic and mandatory." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004) (internal citation omitted); *SPX Corp.* 574 F. Supp. 2d at 757.

In their opposition, Defendants state that they did supplement their responses to Plaintiffs' discovery requests "by producing all of the prior art Xinyi's obviousness defense relies upon, and then further limiting the defense to a substantially smaller portion of the documents produced to Saint Gobain." (Doc. No. 14, Opp. Brief at 1, Ex. A.) Defendants reference a December 27, 2007 letter sent by defense counsel "identify[ing] the prior art which [Defendants] claim to invalidate the claims of the patents-in-suit." (Ex. A.) Appended to this brief letter were 1379 pages produced by Xinyi relating to various prior art.

Such a disclosure falls short of the requirements of Rule 26(e). Defense counsel's letter, which was presumably offered to satisfy the Court's deadline of January 5, 2008 for identifying prior art, makes no reference to the affirmative defense of obviousness, or otherwise puts Plaintiffs on notice that the disclosed prior art, or any part of it, will be relied upon in support of Defendants' obviousness defense. This is especially true given the fact that Defendants had also plead the affirmative defense of anticipation under 35 U.S.C. § 102. [2]

The fact remains that the only supplementation responsive to Plaintiffs' discovery request was the September 30, 2008 discovery supplement. Unfortunately, this supplement was filed 3 months after fact discovery was complete. Defendants offer no excuse that would substantially justify this delay, and fail to demonstrate that Plaintiffs were not harmed by the unexcused delay. Rather, it is obvious that Plaintiffs were prejudicially harmed by the delay. The first time any reference to Defendants'

---

[2] In reaching this conclusion, the Court observes that Plaintiffs incorrectly state that, at the time of defense counsel's letter, Defendants had not plead a claim under 35 U.S.C. § 103, but were merely relying upon

8

obviousness defense occurs is in Phillips's report. Far from educating Plaintiffs on the parameters of this affirmative defense, Phillips's report would have only served to confuse Plaintiffs inasmuch as Phillips relied upon different prior art than Defendants now rely upon in summary judgment to demonstrate obviousness. Had Plaintiffs known of the true nature of this defense, they could have conducted fact and expert discovery accordingly.

Defendants suggest, however, that they were not obligated to seasonably supplement their discovery response because the evidence supporting their obviousness defense had "otherwise been made known" to Plaintiffs during discovery. *See* Fed. R. Civ. P. 26(e)(1)(A). Defendants state that Plaintiffs were well aware of the existence of the prior art, having "spent a considerable amount of time attempting to distinguish the '673 ("Frabotta") reference. Furthermore, Xinyi notes Saint Gobain was the assignee of the '278 ("Kunert") reference." (Opp. Brief at 2.) The fact that relevant prior art exists does not put Plaintiffs on notice that Defendants intend to rely on any particular art in raising their obviousness defense. *See, e.g., Heidelberg Harris, Inc. v. Mitsubishi Heavy Indust., Ltd*., 1996 U.S. Dist. LEXIS 17362, at *21 (N.D. Ill. November 21, 1996) (supplementation of discovery response in patent case after close of fact discovery was insufficient to satisfy Rule 26(e) where the basis of the defense was not fleshed out until after fact discovery had closed). In the absence of substantial justification or a demonstration of harmlessness, preclusion of this defense is warranted. *See, e.g.,* SPX,

---

anticipation under § 102. Rather, in their amended answers, filed February 26, 2007, Defendants raised claims under §§ 102 and 103. (*See* Xinyi Am. Ans., ¶¶ 11-18 ; Xinya Am. Ans., ¶¶ 11-18.)

574 F. Supp. 2d at 756. Plaintiffs' motion to exclude evidence of obviousness (Doc. No. 132) is **GRANTED**.

2.      *Plaintiffs' Motion to Exclude Non-Enablement Defense*

Plaintiffs make a similar argument in favor of precluding Defendants' non-enablement defense, but add a new wrinkle. In addition to the argument that Defendants violated Rule 26(e), Plaintiffs also urge the Court to find this particular defense waived.

While Defendants raised the affirmative defense of invalidity as indefinite and ambiguous under 35 U.S.C. § 112 (Xyini Ans. to Am. Compl., ¶¶ 9-10; Xyina Ans. to Am. Compl., ¶¶ 9-10), they failed to raise any other defenses under § 112, including the affirmative defense of non-enablement. The discovery that followed has been previously discussed and will not be repeated here. Suffice it to say, at the conclusion of fact discovery, Defendants had, in no way, raised non-enablement.

Indeed, the first time this affirmative defense appeared in the record was in the August 1, 2008 expert report of Phillips. Two months after the expert report was filed, and four months after fact discovery had closed, Defendants filed a supplementation to their discovery responses, laying out the non-enablement defense. (Doc. No. 131, Mot., Ex. F at 3.)

Parties are generally required under Fed. R. Civ. P. 8(c) to raise all affirmative defenses early in litigation so that the plaintiff is put on fair notice of the defense.[3] *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Usually, this requires the

---

[3] Rule 8(c) requires a defendant to assert the following two types of defensive allegations: (1) those that admit the allegations of the complaint but suggest another reason why there is no right to recover; and (2)

party to raise its affirmative defenses in its answer. Fed. R. Civ. P. 8(c); *see Daiichi Pharm. v. Apotex Inc*., 2005 U.S. Dist. LEXIS 26059, *5 (D.N.J. Nov. 1, 2005).

However, "[f]ailure to raise an affirmative defense by responsive pleading does not always result in waiver." *Ultra-Precision Mfg. v. Ford Motor Co*., 411 F.3d 1369, 1376 (Fed. Cir. 2005) (internal citation omitted). *See Sushka*, 117 F.3d at 969; *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993). In *Sushka*, the court found no abuse of discretion with respect to the district court's decision to permit the defendant to raise two affirmative defenses in a second motion for summary judgment because there was no unfair prejudice given that the district court allowed plaintiff the opportunity to fully respond to and brief the issues. 118 F.3d at 969. *See Ultra-Precision, LTD*, 411 F.3d at 1376.

In opposition to Plaintiffs' motion in limine, Defendants insist that their non-enablement defense was not "fully developed" until the "startling" admission by Plaintiff's expert, Dr. Siegfried Herliczek, that the patents-in-suit did not inform an installer as to how to install Plaintiffs' windshields, and that he would "have to write a procedure for the installer to do that." (Doc. No. 139, Opp. Brief, Ex. 1, Herliczek Dep. 186-87.) Defendants highlight the fact that they submitted Phillips's report, within three weeks of receiving this crucial evidence, and timely supplemented their previous discovery response shortly thereafter. Defendants further underscore the fact that the "information was in Saint Gobain's control through its expert witnesses." (Opp. Brief at 2.)

---

those that concern allegations outside of the plaintiff's prima facie case. *Daiichi Pharm. v. Apotex Inc.*, 2005 U.S. Dist. LEXIS 26059, at *5 (D.N.J. Nov. 1, 2005).

The Court is not persuaded. The fact that Plaintiffs' expert was in possession of the information does not put Plaintiffs on notice as to the nature of Defendants' non-enablement defense. *See Daiichi*, 2005 U.S. Dist. LEXIS 26059, at *9-*10 (D.N.J. Nov. 1, 2005) (Plaintiffs did not receive notice of defense under § 102(f), notwithstanding the fact that the documents upon which the defendants relied were in possession of plaintiffs' experts). Indeed, the possession of such opinion information would not inform Plaintiffs of the substance of the affirmative defense, or even suggest that the defense of non-enablement was being asserted.

Moreover, Defendants do not suggest that they were unaware of the existence of their affirmative defense until they deposed Plaintiffs' expert, nor could they make such a representation. The patents and disclosures were known to Defendants from the inception this lawsuit. Rather, Xini merely suggests that it was not until it deposed Plaintiffs' expert that Xinyi "fully understood the strength of its position." (Opp. Brief at 5.) Be that as it may, Defendants have failed to justify the fact that they did not even plead the affirmative defense.[4]

Nonetheless, the Court finds that there is no unfair prejudice in permitting Defendants to raise the non-enablement defense. *See Sushka*, 18 F.3d at 969; *Ultra-Precision,* 411 F.3d at 1376. Unlike Defendants' obviousness defense, Defendants' non-enablement defense does not rely on fact discovery. (*See* Doc. No. 140 at 3) ("Xinyi's obviousness defense relies completely upon the undisputed prior art [and not upon expert

---

[4] Nor have Defendants demonstrated substantial justification for their failure to timely supplement their discovery responses under Rule 26(e). "If a party is allowed to withhold the supplementation of its discovery responses until after fact discovery is closed, the purposes of the Rule is effectively frustrated because the opposition party is denied the opportunity to conduct discovery on the supplemented responses." *Heidelberg*, 1996 U.S. Dist. LEXIS 17362, at *25.

testimony].") Rather, it relies exclusively upon expert testimony. Defendants submitted their expert's report within the time period set forth in the Court's Second Amended Case Management Plan and Trial Order (CMPTO).[5] Plaintiffs were given an opportunity to fully brief the issue, and were able to offer their own expert evidence in opposition to Defendants' affirmative defense. Given the fact that Plaintiffs were not harmed by the delay, the Court **DENIES** Plaintiffs' motion in limine (Doc. No. 131) to exclude Defendants' non-enablement defense.

       3.     *Plaintiffs' Motion to Exclude Expert's Theoretical Calculations*

In their final motion in limine (Doc. No. 130), Plaintiffs seek to exclude evidence relating to certain theoretical calculations contained in the expert report of Dr. Giacomin. Just as they did with respect to Defendants' claims of invalidity, Plaintiffs sought to discover the basis for Defendants' claims of non-infringement via written discovery. (Doc. No. 130, Mot., Ex. B.) Once again, Defendants indicated that they raised the defense to avoid waiving it, and that they would supplement the response in the course of discovery. (Ex. C.) In a letter dated August 7, 2007, Plaintiffs requested a substantive response to their non-infringement contention interrogatory. (Ex. D.) Defendants did not respond.

On September 8, 2008, Defendants served the report of their non-infringement expert, Dr. Giacomin, in which Dr. Giacomin opined that Defendants' windshields could not infringe the patents-in-suit because the lip portion of the spacers attached to these windshields cannot provide sufficient centering force. Plaintiffs note that the basis for this defense is calculations performed in Section XII (pages 56-62) of

---

[5] Plaintiffs did have the opportunity to depose Phillips, but chose not to do so.

Dr. Giacomin's report. Plaintiffs opposes the introduction of this "theoretical calculations defense," claiming that the defense is both untimely and based upon a "demonstrably false premise." (Mot. at 2.)

      *a.*    *Untimeliness*

In support of their untimeliness argument, Plaintiffs cite the decision in *Thermos Co. v. Starbucks Corp.*, 1999 U.S. Dist. LEXIS 5079 (N.D. Ill. Apr. 5, 1999). In *Thermos*, the court granted the plaintiff's motion to exclude evidence of the defendants' non-infringement defense because defendants attempted to raise the defense for the first time in their expert reports, without supplementing prior discovery responses. *Id*. at *19. *See Heidelberg*, 1996 U.S. Dist. LEXIS 17362, at *24-*25 (Defendants failed to timely raise their affirmative defense where it was presented for the first time in their expert's report.)

The present suit is distinguishable, however, from *Thermos Co*. because Defendants are not attempting to raise an affirmative defense. Plaintiffs have offered no evidence that "theoretical calculations" are in and of themselves an affirmative defense, and the Court is aware of none. It is clear that the theoretical calculations offered by Dr. Giacomin merely provide the proof to back up his non-infringement analysis, and that these calculations were timely disclosed during the course of expert discovery.

Even if these calculations constituted an affirmative defense, the Court finds that Plaintiffs would have suffered no harm from their untimely submissions. Plaintiffs were able to depose Dr. Giacomin at length, and were also able to provide their own expert testimony to challenge Dr. Giacomin's findings in the person of Dr. Sue Mecham. Having been given a full and fair opportunity to investigate and brief the issues

raised in Dr. Giacomin's report, there is no prejudice to Plaintiffs that would warrant the exclusion of this evidence. *See Sushka*, 18 F.3d at 969; *Ultra-Precision,* 411 F.3d at 1376.

> b.    Unreliable

Plaintiffs also argue that Dr. Giacomin's theoretical calculations are inherently unreliable because they are based upon a faulty premise. Specifically, Plaintiffs note that Dr. Giacomin's calculations assume that the rubber spacer immediately contacts the frame of the car. (Mot., Ex. H, Giacomin Dep. at 189.) This is, according to Plaintiffs' expert, Dr. Mecham, wrong because there is no contact until the end of the window installation procedure. (Ex. E, Mecham Decl. at ¶¶ 7-8.) The results of this erroneous presumption "require the lip portion to overcome forces which are much, much higher than they are during actual, real-world installations." (Mot. at 10.)

Defendants counter with the position that Dr. Giacomin applied recognized scientific methods in reaching his conclusions, and that it is Dr. Mecham who has erred in her analysis of Xinyi's procedures.[6] Rather than focusing on timing as Dr. Mecham does in her report, Defendants insist that Dr. Giacomin properly relied on the forces at work in the centering of the windshield. (Opp. Brief at 12.) Further, Defendants

---

[6] Specifically, Dr. Giacomin states that he applied engineering mechanics (the study of forces and displacements) to interpret his test results. (Giacomin Decl. at ¶¶ 9-13.)  Dr. Giacomin studied the forces on the accused glazings during the installation and concluded that the accused products could not move the window glazing laterally at all, "because they simply cannot overcome the friction between the glazing and the automobile." (*Id*. at 9, citing Giacomin's Report at 56-62.) According to Dr. Giacomin, this opinion was not based solely upon his calculations but also upon the hardness testing and spring lip deflection testing of the lips of the accused products in the laboratory. (*Id*. at ¶ 9.) His calculations, in turn, were based upon the results of his scientific laboratory testing. (*Id*.) Moreover, Dr. Giacomin notes that his "calculations…are the engineering mechanics for the decentering of the accused windshields. The calculations are not mathematical speculations or random assumptions. They are precise mathematical calculations coupled with sound engineering analysis based upon well-established principles of mathematics and physics upon which the discipline of engineering mechanics is grounded." (Giacomin Decl. at ¶ 13.)

believe that Dr. Mecham also errs in assuming, without empirical evidence, that the lips

of the spacers perform the centering function. (*Id.* at 13.)

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court of the United States has recognized that trial judges

bear the "responsibility of acting as gatekeepers to exclude unreliable expert testimony."

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). The Court is to ensure the

reliability of the expert testimony, but the factfinder is to evaluate the conclusions experts

generate. *One Beacon Ins. Co. v. Broad. Dev. Group, Inc*., 147 F. App'x 535, 544 (6th

Cir. 2005).

An expert's opinion is admissible, at the discretion of the trial court, if the

opinion satisfies three requirements:

> First, the witness must be qualified by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*. Third, the testimony must be reliable. *Id.* Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based upon "sufficient facts or data," whether the testimony is the "product of reliable principles and methods," and whether the expert "has applied the principles and methods reliably to the facts of the case." *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (citing *Daubert*, 509

U.S. at 593-94). The test for reliability is "flexible" and the proposed *Daubert* factors do not constitute a "definitive checklist or test," but may be tailored to the facts of any given case. *Id.* For purposes of this motion in limine, Plaintiffs do not question the first two factors, relating to Dr. Giacomin's qualifications and the relevance of his theoretical calculations. Instead, Plaintiffs confine their challenge to the reliability of Dr. Giacomin's calculations.

In doing so, Plaintiffs have confused the credibility and accuracy of Dr. Giacomin's opinions with their reliability. Contrary to Plaintiffs' assertions, "a determination that proffered expert test is reliable does not indicate, in any way, the correctness or truthfulness of such an opinion." 527 F.3d at 529. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* (citing Rule 702). *See Daubert*, 509 U.S. at 593-94.

The decision in *Scrap Metal* is illustrative. There, the expert had based his opinion upon arguably erroneous data, leading to what defendant believed was an hopelessly flawed conclusion. However, because the expert offered a foundation for how and why he analyzed the data as he did, the court ruled that the argument went to the credibility rather than the reliability of the expert's opinion. *Id*. at 531. *See United States v. Bonds,* 12 F.3d 540, 563 (6th Cir. 1993) ("[C]riticisms about the specific application of the procedure used or questions about the accuracy of the test results do not render the scientific theory and methodology invalid or destroy their general acceptance. These questions go to the weight of the evidence, not the admissibility.") (citing *Daubert*, 509 U.S. at 594-95); *Quiet Tech., DC-8, Inc. v. Hurel-Dubois UK Ltd*., 326 F.3d 1333, 1343-

44 (11th Cir. 2003) (an accusation that an expert used incorrect data was an attack that went to "the weight of the evidence, rather than to its admissibility.")

Here, plaintiffs take issue with Dr. Giacomin's presumption that the protuberance immediately contacts the frame. Plaintiffs do not, however, argue that his report is entirely unsupported. Further, Dr. Giacomin has laid a proper foundation for his analysis of the installation process, and explained why he evaluated the data as he did. Plaintiffs' attack clearly goes to the weight and not the reliability of Dr. Giacomin's report. *See, e.g., Scrap Metal; One Beacon Ins*., 147 App'x at 544. At trial, Plaintiffs will have the opportunity to test the credibility and accuracy of Dr. Giacomin's conclusions, but evidence of Dr. Giacomin's theoretical calculations is clearly admissible. As such, Plaintiffs' motion to exclude evidence of theoretical calculations (Doc. No. 130) is **DENIED**.

### B.    Defendants' Motion for Summary Judgment

Defendants contend that there is no evidence in the record that would support the conclusion that the accused products can perform the centering function "which is the sine quo non of the patents in suit." (Doc. No. 122, Mot. for Sum. Judg. at 1.) Without such evidence, Defendants maintain that they are entitled to the summary dismissal of Plaintiffs' Amended Complaint.

#### 1.    *Defendants' Non-Infringement Argument*

In moving for summary judgment on the issue of infringement, an issue that Plaintiffs carry the burden of proof, Defendants must state the basis for their motion and point out that the evidence in the record would be "insufficient to avoid a directed verdict" against Plaintiffs. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d

18

1042, 1046 (Fed. Cir. 2000) (citing *Celotext Corp*. 477 U.S. at 323.) If Defendants satisfy this burden, Plaintiffs must "designate certain facts showing that there [is] a genuine issue for trial." *Id.*

        "Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *Riles v. Shell Exploration and Prod. Co*., 298 F.3d 1302, 1309 (Fed. Cir. 2002) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem*. Co., 520 U.S. 17, 40 (1997)). "A claim element is equivalently present in an accused device if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device." *Sage Prods., Inc. v. Devon Indus.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997) (internal citation omitted). "Whether a component in the accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination." *Ethicon Endo-Surgery v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). *See Riles*, 298 F.3d at 1309.

a)     *Factual Basis and Expert Testimony*

        Defendants argue that Plaintiffs have no factual basis upon which to rest their claim of infringement. In reaching this conclusion, Defendants highlight the fact that Plaintiffs' non-infringement expert, Robert Beranek, conceded in his deposition, that although he installed several of Defendants' windshields, he did not observe any of Defendants' products perform any function described in the patents-in-suit, "in particular the 'centering' function." (Mot. at 11.)

        Mr. Beranek's deposition testimony on the subject of the "centering" function unfolded as such:

19

Q. Have you seen the lip on Xinyi glass –

A. –perform any function.

Q. –perform any function.

A. Yes.

Q. What functions?

A. Well, it makes the glass appear proper and close to OEM installation. Too, it is – it bends, the lip bends and causes a tension to the wall of the pinch weld to perform a type of seal.

Q. Okay. Anything else?

A. No.

(Doc. No. 123, Defendants' Appendix, A-35, Beranek's Dep. at 194.)

***

Q. Have you observed the lip portion of a Xinyi windshield providing a force to center the glazing on the bracket?

A. No.

(Beranek's Dep. at 215.) Defendants argue that because Plaintiffs' expert did not witness Defendants' products performing the function of centering, the conclusions of the expert are inadmissible because they lack a factual foundation. *See Collins*, 216 F.3d at 1046 ("It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact.")

As was the case with Plaintiffs' attack upon the report of Defendants' expert, Defendants do not challenge Dr. Beranke's qualifications or the relevance of his proposed testimony. Rather, it is Defendants' position that Berkanek's conclusions are not supported by record facts because he did not view the "centering" function in Xinyi's

20

windshields, and, therefore, his testimony is inadmissible under Rule 702. *See Collins*, 216 F.3d at 1046.

Plaintiffs take issue with Defendants' assessment of Beranek's report, noting that Bernanek provided in his report a detailed description of the process he used to determine infringement. (Doc. No. 129, Opp. Brief at 7, citing Beranek's Report at 8-14.) He then analyzed each claim limitation, and "provided his reasoning as to why the accused Xinyi windshields meet each limitation." (*Id*., citing Beranek's Report at 15-71.) In particular, Plaintiffs direct the Court's attention to Beranek's deposition testimony wherein he noted that the lip makes the glass "appear proper and close to OEM installation" (Beranek's Dep. at 194), and that the lip bends and causes tension (*Id*). Plaintiffs further note that for the accused Xinyi windshields which Beranek had not actually installed, he based his opinion of infringement on his "installation of certain accused Xinyi windshields having similar if not identical lips made from the same materials." (Opp. Brief at 9, citing Beranek's Dep. at 216-17.)[7] Finally, Plaintiffs point out that at other places in his deposition, Beranek testified that the lip portion of Defendants' accused products maintains centering. (Beranek Dep. at 220-21; 231.)

The Court finds that Plaintiffs have come forward with sufficient record evidence to demonstrate that Beranek's report is based upon "sufficient facts or data" to ensure that it rests upon a "reliable foundation." Fed. R. Evid. 702; *Scrap Metal,* 527 F.3d at 529. As to the function of "centering," the Court finds that there are genuine issues of material fact. While Beranek may not have observed the centering function in every

---

[7] Plaintiffs also call Defendants' representation of Beranek's testimony misleading because when Beranek testified that he had not witnessed a centering force in Xinyi's windshields, he was referring to a single

21

Xinyi windshield, there is evidence in his report supporting a finding that he observed other Xinyi windshields perform this function. Balanced against Beranek's opinion is Dr. Giacomin's opinion that the accused products could not perform the centering function, and, thus, an issue of fact exists. *See Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, 2008 U.S. Dist. LEXIS 47189, *11 (D.N.J. June 12, 2008) ("[O]rdinarily, the mere existence of competing expert opinion dispels resolution by summary judgment."); *Ritchie v. United States*, 2004 U.S. Dist. LEXIS 9270, *41 (N.D. Cal. May 24, 2004) ("It is not the role of this court upon a motion for summary judgment to pick between…competing experts […]."); *Diamond v. Sokol,* 468 F. Supp. 2d 626, 636 n.9 (S.D.N.Y. 2006) ("[T]he qualifications and opinions of dueling experts are issues for trial; defendant cannot win summary judgment on the strength of a contested expert opinion.") In addition, there remains a question of fact as to whether Beranek's response that he saw the glass "appear proper and close" constitutes a finding of centering.[8]

### b)     *Defendants' Evidence*

While Defendants insist that Plaintiffs have failed to meet their burden of proof as to the ultimate issue of infringement, Defendants believe that they have come forward with uncontested evidence that the accused windshields do not perform the "centering" function. Specifically, Defendants direct the Court's attention to Dr.

---

Xinyi windshield, NAGS number FW02579. While Beranek testified that he did not install this windshield, he testified that he did install other brands with that model number. (Beranek Dep. at 205.)

[8] Defendants also base their argument that Plaintiffs' infringement claim is unsupported upon the testimony of Dennis Warlick, who testified that he did not know which claims of the patents-in-issue infringed upon Plaintiffs' patents, and could not provide the factual basis for an element-by-element reading of the claims of the patents-in-suit. (Mot. at 9-10, citing A-31, Warlick Dep. at 31, 40-41, 51.) This argument is unavailing inasmuch as Plaintiffs are not required to provide testimony from a fact witness on the issue. *See Symbol Techs., Inc. v. Opticon, Inc*., 935 F.2d 1569, 1576 (Fed. Cir. 1991) (affirming a finding of infringement where patentee had relied exclusively on expert testimony).

Giacomin's report wherein he opined that the accused products cannot "move the window glazing vertically at all" and cannot "move the window glazing laterally at all, because they simply cannot overcome the friction between the glazing and the automobile." (A-108, Giacomin Report at ¶¶ 47-48.)

Once again, Plaintiffs attack Defendants' representation of the evidence, and, in particular, Defendants' characterization of Dr. Giacomin's testimony as uncontested. As previously discussed, Mr. Beranek concluded that the lip on the accused Xinyi windshields performs the "centering" function. (Beranek Dep. at 214.) Plaintiffs also question the validity of Dr. Giacomin's opinions, based upon Dr. Mecham's determination that the proper coefficient of friction to be used is significantly less than 1.0, and not the 2.5 that Dr. Giacomin assumed. (Mecham Decl. at ¶¶ 10-11.) In her declaration, Dr. Mecham explained:

> Another way to explain the error in Dr. Giacomin's theoretical analysis is that by assuming contact between the protuberance and the car frame at the beginning of the installation procedure, Dr. Giacomin is requiring the lip portion to overcome significant rubber-on-solid frictional forces between the protuberance and the car frame which do not exist during the relevant time period of actual installation processes when centering occurs. In other words, the forces which Dr. Giacomin asserts must be overcome by the lip portion of Xinyi's spacers to provide centering in his theoretical analysis are much, much higher than they are during actual, real-world installation.

(*Id*. at ¶ 9.)

As the Court has already determined, Plaintiffs' attack upon Dr. Giacomin's report goes to the weight to be given the report by the trier of fact, rather than whether the report is reliable. *In re Scrap Metal*, 527 F.3d at 529 (citing Rule 702). *See Daubert*, 509 U.S. at 593-94. Further, the existence of competing expert reports

containing contested conclusions as to the ultimate issue of fact precludes the Court from granting summary judgment to either side on the issue of infringement. *See Sanofi-Aventis U.S. LLC*, 2008 U.S. Dist. LEXIS 47189, at *11; *Ritchie*, 2004 U.S. Dist. LEXIS 9270, at *41; *Diamond,* 418 F. Supp. 2d at 636 n.9

c)      *"Help Center" ('669 Patent)*

In their Third Amended Response to Defendants' First Set of Interrogatories, Plaintiffs provided an element-by-element reading of each claim under the '669 patent, identifying how each element of each claim was violated by Xinyi's windshields. (A-I, Tab A.) Repeatedly, Plaintiffs stated that the spacers have a lip portion which extends beyond the edge of the glazing," and that "the lip portion helps to center the glazing upon the bracket."[9] (Tab A, Claim 2 at 5.)

In contrast, Defendants note that the claims for the '669 patent provide for automatic centering. To illustrate their point Defendants look to Claim 1, which states that "the first spacer being provided with a means for centering and aligning the glazing…." (Col. 4:25-26), and Claim 9, which provides in part: "the lip portion resiliently bending and contacting the bracket when the glazing is placed thereupon to provide the centering force…." (Col. 5:8-10.)

According to Defendants, the explanations of the claims and the accused products demonstrates that the claims of the '669 patent are distinguished from the Xinyi windshields by the fact that the '669 patent provides for automatic centering, while Xinyi

---

[9] Elsewhere, Plaintiffs noted that "[w]hen the Accused Products are installed in a window frame containing a bracket, the protuberance helps to support the glazings upon the bracket" (Claim 8 at 6), "the lip portion helps to center and align the glazings" (Claim 9 at 7), and "the protuberance helps to support the glazings upon the bracket." (Claim 16 at 8.)

windshields merely help center the glazings.[10] Indeed, Defendants maintain that the automatic centering of the '669 patent is what distinguishes this invention from the prior art.[11] Defendants observe that nowhere in the specification or the prosecution history was the lip described as "helping to center." Because Defendants' windshields cannot automatically center, and can only provide "help" centering, Defendants argue that their products cannot infringe upon the '669 patent.

Again, Plaintiffs challenge Defendants' representation of the record, pointing out that the term "automatic centering" appears nowhere in the claims of the '669 patent, and Defendants did not assert at the claim construction stage the "automatic centering" limitation. Rather, the lip portion provides some force, while the installer applies additional force to position the windshield. (Ex. 1, Col.2:13-15.) Nonetheless, Plaintiffs remind the Court that their expert, Mr. Beranek, did testify in his deposition that the lip of Xinyi's windshields automatically centers the windshield. (Beranek Dep. at 90-91; *see also* Beranek Report at ¶ 16.) While Plaintiffs do not believe that the function of "automatic centering" is part of the claim construction for the '669 patent, they underscore the fact that their expert has determined that Xinyi's windshields meet this limitation.

Once again, the Court is confronted with a factual dispute, for which

---

[10] The '669 patent provides, in part: "During insertion of the glazing into the window frame, glazing 1 is automatically centered, so that a gap 12 of even width remains all around glazing 1. (Doc. No. 129, Ex. 1, Col. 3:19-20.)

[11] Defendants note that during the prosecution of the '669 patent, the "applicants made clear to the examiner that the automatic centering distinguishes the invention." (Mot. at 14.) Specifically, the PTO observed that "applicant's elongated lip allows automatic alignment of a glazing brought into contact with its receiving frame. Applicant's lip portion obviates the need for precise pre-assembly alignment required by Weaver and thereby increases ease of installation." (A-100, Prosecution History Chronology, June 24, 1991.)

dueling expert reports have been offered. *See Sanofi-Aventis U.S. LLC*, 2008 U.S. Dist. LEXIS 47189, at *11; *Ritchie*, 2004 U.S. Dist. LEXIS 8270, at *41; *Diamond,* 418 F. Supp. 2d at 636 n.9. At trial, several issues will need to be determined by the trier of fact; namely, whether there is a distinction between the "centering" function described in the patents-in-suit and the "helps center" function described in the accused products, whether either product "automatically centers," and, ultimately, whether Defendants' products infringe upon the patents-in-suit. Given the state of the record, however, these issues cannot be resolved on summary judgment.

2.     *Defendants' Non-enablement Argument*

"Every patent is presumed valid. *See* 35 U.S.C. § 282 (1994). The presumption of validity includes a presumption that the patent complies with § 112." *National Recovery Techs., Inc. v. Magnetic Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999). "Invalidity for lack of enablement is a conclusion of law and must be supported by facts proved by clear and convincing evidence. *Id.* (citing *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990)). The statutory basis for the defense of non-enablement is found in § 112:

> The specification shall contain a written description of the invention, and of the manner and process of marking and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which is most nearly connected, to make and use the same….

35 U.S.C. § 112.

"To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genetech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir.

1997). *See Enzo Biochem, Inc. v. Calgene, Inc*., 188 F.3d 1362, 1371 (Fed. Cir. 1999); *Northern Telecom, Inc*., 908 F.2d at 941 ("A decision on the issue of enablement requires determination of whether a person skilled in the pertinent art, using the knowledge available to such a person and the disclosure in the patent document, could make and use the invention without undue experimentation.") It is not fatal to a patent specification if it requires a "reasonable" amount of experimentation in order to practice the patent, so long as the experimentation required is not "undue." *Enzo Biochem, Inc*., 188 F.3d at 1371; *Northern Telecom, Inc*., 908 F.2d at 941.

In evaluating whether "undue experimentation" is required by the patent specifications, the Court is guided by the factors set forth in *In re Wands*, 858 F.2d 731 (Fed. Cir. 1988). Those factors include:

> the quantity of experimentation necessary, the amount of direction or guidance presented, the presence or absence of working examples, the nature of the invention, the state of the art, the relative skill of those in the art, the predictability or unpredictability of the art, and the breadth of the claims.

858 F.2d at 737 (numerals omitted). These factors merely serve as a guide and need not all be considered by the district court. *Enzo*, 188 F.3d at 1371; *see Amgen, Inc. v. Chugai Pharm. Co., Ltd,* 927 F.2d 1200, 1213 (Fed. Cir. 1991). "Whether making and using the claimed invention would have required undue experimentation is a legal conclusion based upon the underlying facts." *National Recovery Techs*., 166 F.3d at 1197.

a.  Claims 14, 15, and 16 of '395 Patent

Defendants contend that the specifications on these claims are inadequate because they fail to provide guidance or working examples, and, thus, require undue experimentation. While the specifications provide general instructions for proceeding

27

during the installation stage, Defendants insist that the specifications are devoid of detailed instructions that would assist the installer in using the '395 patent to install a windshield. The cornerstone of Defendants' argument is the deposition testimony of Plaintiffs' expert Siegfried Herliczek, Ph.D., who, when asked if someone would be able to install a windshield using the '395 patent's disclosures, stated "I would have to write a procedure for the installer to do that." (Herliczek Dep. at 186-87.) According to Defendants, this omission demands a finding of non-enablement.

Plaintiffs counter with Dr. Herliczek's opinion expressed in his expert report that someone skilled in the art could install Plaintiffs' windshields. Specifically, his report provides that:

> An installer, following the disclosure of the patent, would be able to install a windshield in a car frame, particularly with respect to the explanation relating to the lip portion of the spacer as well as his general knowledge of windshield installation.

(Doc. No. 129, Ex. 14A, Herliczek Report at 10.) Plaintiffs go on to observe that the question posed by defense counsel, for which Dr. Herliczek stated that he would need to write installation instructions, assumed that defense counsel, and not someone skilled in the art, was the installer.[12] (Herliczek Dep. at 186-87.)

Moreover, it is Plaintiffs' position that there was no need for installation instructions because such information is well-known to those skilled in the art, and cite the decision in *Lindmann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452 (Fed. Cir. 1984) for support. In *Lindmann*, the Federal Circuit determined that a patent that did not disclose a hydraulic and electrical system was not invalid for non-

---

[12] Specifically, the question posed to Dr. Herliczek by defendants counsel was: "I'm the installer....Tell me

28

enablement where "[t]he unchallenged evidence of record establishes that hydraulic and electrical systems for metal scrap shears were well known to those skilled in the art…." 730 F.2d at 1463. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.2d 1052, 1070 (Fed. Cir. 2005) (omission of the method used to mutate certain genes did not invalidate the patent where it was "undisputed that…those skilled in the art knew several techniques for altering genetic sequences, including deletion and point mutations.").

   In support of their position that the installation of windshields using the patents-in-suit was well-known, Plaintiffs point to the deposition testimony of Defendants' expert Bruce Randall, wherein he stated that the fundamentals of installing the accused windshields were the same as those for installing other windshields. (Opp. Brief, Ex. 12, Randall Dep. at 127.) While the courts in *Lindmann* and *Invitrogen* found uncontroverted evidence that the omitted information in question was well-known to those skilled in the art, the Court finds the record in this case to be not as certain. The fact that the procedure for installing windshields using Plaintiffs' patents is similar to the procedure used for other installations does not establish that the information in question is so well-known that no explanation is needed. Given the state of the record, the Court cannot say, as a matter of law, that Randall's statement establishes definitively that the windshield installation procedure utilizing the technology of the '395 patent was well-known to those skilled in the art. Nor can the Court find that Dr. Herclizek's statement that an installation procedure would be needed for the average person necessarily reveals a fundamental deficiency in the patent. Consequently, a question of fact remains.

   Defendants also emphasize that the disclosures for the '395 patent fail to

---

how I do it." (Ex. 19, Herliczek Dep. at 185-86.)

state the requisite strength or elastic modulus of the material to be used to maintain the centering of the windshield. Plaintiffs note, however, that the specifications provide that a polymer is preferably elastomeric.[13] From this notation, Plaintiffs argue that one skilled in the art would be "lead" to use "an elastomeric compound such as one of the identified polyurethanes, and would lead away from using flimsy, low durometer value plasticized PVC."  (Opp. Brief at 28, citing Mecham Report at ¶ 8.)

Questions of fact remain regarding what is well-known in the industry, and whether suggestions regarding various materials are sufficient to enable the patents. These unresolved factual issues preclude the Court from finding, as a matter of law, that the claims of the '395 patent are not enabled.

    b.    '669 Patent Claims

With respect to the '699 patent claims, Defendants assert that undue experimentation is required to practice these claims because the specifications provide no guidance as to material selection for the spacer, the spacer profile, or lip dimensions. Defendants also observe that there are no working examples to assist one skilled in the art. Further, they showcase the deposition testimony of Beranek wherein he stated that he did not know the requisite strength of the spacer and did not know the force necessary to center a Xinyi windshield on the bracket. (Beranek Dep. at 151-52, 172-73, 174, 220, 224.)[14]

---

[13] An elastomeric is a compound which has inherent strength and elasticity owing to internal bonding or cross linking. (Mecham Report at ¶ 8; Mecham Decl. at ¶ 12.)

[14] Defendants state that Claims 1, 9, and 16 of the '669 patent disclose a glazing which is automatically centered, but "fail to teach a person of ordinary skill in the art how to practice the claimed invention." (Mot. at 27.)

Plaintiffs assert that the '669 patent discloses suitable materials for use in the spacers of the invention[15] (Herliczek Decl. at ¶ 7), the shape of the spacer (Fig. 1 & 2), length of the lip, and how to orientate the lip. This is sufficient, Plaintiffs suggest, to permit one skilled in the art to use the spacer. (*See* Herliczek Report at 10: "An installer, following the disclosure of the patent, would be able to install a windshield in a car frame, particularly with respect to the explanation relating to the lip portion of the spacer as well as his general knowledge of windshield installation.")

Plaintiffs also note that Beranek has never claimed to be an expert in materials. Their expert on enablement, Dr. Herliczek, on the other hand, testified that the '669 patent adequately discloses information for someone skilled in the art to practice the patent claims; an opinion that is supported by analysis involving a review of various expert reports, the patents-in-suit, prior art, and the patent history. (Herliczek Dep. at 191-92; Herliczek Decl. at ¶ 7; Herliczek Report at 2-3.) The Court finds this testimony sufficient to create a genuine issue of material fact on the question of enablement, precluding summary judgment on this defense.

---

[15] The record on this subject is not as strong as Plaintiffs would suggest. When asked about the materials to be used for the spacer in his deposition, Dr. Herliczek admitted that "[t]he—the patent, if I remember correctly, does not give exactly what the materials should be," though he thought that "it must be an elastic material." (Herliczek Dep. at 192)

## IV.

### CONCLUSION

For all of the forgoing reasons, Defendants' motion for summary judgment (Doc. No. 122) is **DENIED**. Plaintiffs' motion in limine to exclude evidence of theoretical calculations (Doc. No. 130) is **DENIED**, Plaintiffs' motion in limine to exclude the affirmative defense of non-enablement (Doc. No. 131) is **DENIED**, and Plaintiffs' motion in limine to exclude the affirmative defense of obviousness (Doc. No. 132) is **GRANTED**.

**IT IS SO ORDERED**.

Dated:  October 12, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**